**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN RE: CESSNA 208 SERIES AIRCRAFT | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | **MDL No: 1721** |
| | ) | |
| (This Document Relates Only To The Cases | ) | **Case No: 05-md-1721-KHV** |
| Consolidated As <u>Jones v. Cessna Aircraft Co.</u>, | ) | |
| D. Kan. No. 08-2273) | ) | |
| _____ | ) | |

<u>**MEMORANDUM AND ORDER**</u>

On October 7, 2007, Bryan E. Jones, Andrew Smith, Hollie Raspberry, Casey Craig, Cecil A. Elsner, Michelle L. Barker, Jeff W. Ross, Landon E. Atkin and Ralph Abdo died in the crash of a Cessna Model 208B airplane near Naches, Washington.  Their estates and relatives filed suit against Cessna Aircraft Company and Goodrich Corporation seeking damages for personal injuries and wrongful death.  This matter is before the Court on <u>Defendant Cessna Aircraft Company's Motion To Dismiss Fraud And Punitive Damages Claim</u> (Doc. #508) filed July 11, 2008.  For reasons stated below, the Court sustains the motion.[1]

<u>**Legal Standards**</u>

Rule 12(b)(6), Fed. R. Civ. P., governs motions to dismiss for failure to state a claim.  When deciding a motion under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from those facts in favor of plaintiffs.  <u>See</u> <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006).  Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiffs' entitlement to relief

---

[1]     Plaintiffs request oral argument on the motion.  <u>See</u> <u>Plaintiffs' Request For Oral Argument On Defendant Cessna's Motion To Dismiss Fraud And Punitive Damages Claim</u> (Doc. #572) filed September 9, 2008.  The Court finds that oral argument will not materially assist in the disposition of the motion.  Accordingly, plaintiffs' request for oral argument is overruled.

through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007); see also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (plaintiffs need not precisely state each element, but must plead minimal factual allegations on those material elements that must be proved).  In other words, plaintiffs must allege sufficient facts to state a claim which is plausible – rather than merely conceivable – on its face.  Bell Atl. Corp., 127 S. Ct. at 1974.

### Factual Background

The complaint is summarized as follows:

In 1986, Cessna, a Kansas corporation with a primary place of business of Kansas, designed, manufactured and assembled its Model 208B aircraft with the authority of the United States Federal Aviation Administration under Type Certificate A37CE.  Cessna also provided customer support for the aircraft including service bulletins, manual revisions and similar support services.  Goodrich, a New York corporation with a primary place of business of North Carolina, designed and manufactured a pneumatic de-icing system which Cessna incorporated on the aircraft.

On October 7, 2007, plaintiffs' decedents, all residents of Washington, were passengers on a Cessna Model 208B aircraft from Star, Idaho to Shelton, Washington.  The plane malfunctioned in icy conditions and crashed in Naches, Washington.  Plaintiffs bring suit on behalf of themselves and the estates of the decedents, which were all established in Washington, alleging product liability claims against Cessna and Goodrich.

In Count III, plaintiffs assert a fraud claim against Cessna as follows:

(a)     CESSNA performed the developmental and performance testing for the Certification of the Cessna 208B aircraft in the calendar years 1984 - 1986 pursuant to the Delegated Option Authorization given to CESSNA by the Federal Aviation Administration [(FAA)] under the requirements of the

Federal Aviation Regulations, ("FAR's") and pursuant to an FAA approved Delegation Option Authorization Procedures Manual that limited FAA involvement in the testing and approval of the aircraft's certification.

(b)    The certification testing of the 208B aircraft for "operations in known icing conditions" was performed pursuant to the DOA authority set forth in the sub-paragraph above and was required to meet the criteria set forth in FAR Part 23, Appendix "C" with respect to water droplet size ("MVD"), droplet water content ("LWC"), exposure as measured by distance and the intermittent or continuous cloud, precipitation and temperature criteria of Appendix "C."

(c)    The testing performed by CESSNA was done knowing that measurement equipment on the aircraft was non-functional, in particular that water droplet size and liquid water content was estimated, weather exposure was [not] calculated and the full requirements of Appendix "C" were not tested or complied with.  This conduct was done willfully, wantonly, and in total disregard for the lives and safety of aircraft owners, operators, pilots, and passengers who relied upon the certification requirements of the FAA as applied by Cessna through the application of its "DOA" status as an indication of the 208B's safety and airworthiness. * * *

(g)    The deliberate, willful, wanton, and knowing false creation and publication of data in training publications was done in deliberate disregard for the lives of aircraft owners, operators, pilots, and passengers including plaintiffs' decedents and was relied upon as authoritative training information by pilots and regulatory agencies, and was consequently an intentional fraud and constituted punitive conduct giving rise to CESSNA's liability for punitive damages under Kansas law.  * * *

(i)    As of October 8, 2007, the error in the miscalibration of the 208B aircraft stall warning system was not publicly disclosed to owners, operators, pilots or passengers of the effected aircraft, including those individuals responsible for the operation of the accident aircraft.  This conduct, the discovery of a known error in the design and manufacture of a system critical to operations in known icing conditions and [its] impact on the safety of flight and airworthiness of the 208B for use in [its] intended operation envelope and the concealment of that error for two years demonstrates deliberate, willful, and wanton conduct that was clearly in total disregard for the lives and safety of plaintiffs' decedents, which taken as a whole constituted fraud and punitive conduct giving rise to CESSNA's liability for punitive damages under Kansas law.

Plaintiff's Consolidated Complaint At Law (Doc. #486) at 20-24.

**Analysis**

Cessna argues that the Court should dismiss plaintiffs' fraud claim because (1) Washington state law prohibits the recovery of punitive damages and (2) even if Kansas law applies, the Court should dismiss plaintiffs' claim for failure to state a claim and failure to plead fraud with particularity.

**I.      Choice Of Law**

In multidistrict litigation, the Court applies the choice-of-law rules of the state where plaintiffs originally filed suit. Johnson v. Cont'l Airlines Corp., 964 F.2d 1059, 1063 (10th Cir. 1992); see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Van Dusen v. Barrack, 376 U.S. 612, 639 (1964). Because plaintiffs originally filed this case in the United States District Court for the Western District of Washington, the Court applies Washington choice of law rules.

Washington courts engage in a conflict of laws analysis only if the laws or interests of Washington actually conflict with the laws or interests of another state. Erwin v. Cotter Health Ctrs., 167 P.3d 1112, 1120 (Wash. 2007); Seizer v. Sessions, 940 P.2d 261, 264 (Wash. 1997); Burnside v. Simpson Paper Co., 864 P.2d 937, 941 (Wash. 1994). Washington law bars punitive damage awards unless they are authorized by statute. Barr v. Interbay Citizens Bank, 635 P.2d 441, 443 (Wash. 1981); Korslund v. DynCorp Tri-Cities Servs., Inc., 88 P.3d 966, 985 (Wash. Ct. App. 2004). Kansas law permits punitive damages to punish a wrongdoer for "malicious, vindictive, or willful and wanton" behavior with the ultimate purpose to restrain and deter others from committing similar wrongs. Folks v. Kan. Power & Light Co., 243 Kan. 57, Syl. ¶ 6, 755 P.2d 1319, Syl. ¶ 6 (1988), overruled on other grounds by York v. InTrust Bank, 265 Kan. 271, 962 P.2d 405 (1998);

-4-

<u>Golconda Screw, Inc. v. W. Bottoms Ltd.</u>, 20 Kan. App.2d 1002, 1007, 894 P.2d 260, 265  (1995).

Accordingly, on the issue of punitive damages, the laws of Washington and Kansas are in actual

conflict.[2]

To resolve choice of law issues, Washington courts apply the most significant relationship

test of the Second Restatement of Conflict of Laws.  <u>See</u> <u>Southwell v. Widing Transp., Inc.</u>, 676

P.2d 477, 479-80 (Wash. 1984); <u>Johnson v. Spider Staging Corp.</u>, 555 P.2d 997, 1000 (1976);

Restatement (Second) of Conflict of Laws §§ 6, 145 (1971).   Under this test, the Court first

considers the various contacts including (a) the place where the injury occurred, (b) the place where

the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of

incorporation and place of business of the parties, and (d) the place where the relationship, if any,

between the parties is centered.  Restatement (Second) of Conflict of Laws § 145(2).  The Court

evaluates these contacts according to their relative importance with respect to the particular issue.

<u>Southwell</u>, 676 P.2d at 480.

Because plaintiffs' claim for punitive damages is against Cessna only, the Court evaluates

the most significant relationship test only as to Cessna and does not consider Goodrich contacts.

In personal injury cases, the Second Restatement creates a presumption that the law of the state

---

[2]        Washington law does not require that all claims be governed by the law of the same
state.  <u>See</u> <u>DC3 Entm't, LLC v. John Galt Entm't, Inc.</u>, 2006 WL 278573, at *10 (W.D. Wash.
Feb. 2, 2006) (Washington courts have applied Restatement principle that one state's laws might
govern compensatory damages, while another state's laws govern punitive damages); <u>see</u> <u>In re Air
Crash At Belle Harbor, N.Y. on November 12, 2001 ("Belle Harbor")</u>, No. MDL 1448, 2006 WL
1288298, at *23 (S.D.N.Y. May 9, 2006); <u>In re Air Crash Disaster Near Chicago, Ill., On May 25,
1979 ("Chicago")</u>, 644 F.2d 594, 611 (7th Cir. 1981); <u>In re Air Crash Disaster At Stapleton Int'l
Airport, Denver, Colo., On November 15, 1987 ("Stapleton")</u>, 720 F. Supp. 1445, 1448 n.3 (D. Colo.
1988); <u>cf.</u> <u>Dansby v. Fetzek</u>, No. 51486-5-I, 2003 WL 21689987 (Wash. Ct. App. July 21, 2003)
(parties to contract may choose to have another state's law apply to different issues).

where the injury occurred applies "unless another state has a greater interest in determination of that particular issue." Martin v. Goodyear Tire & Rubber Co., 61 P.3d 1196, 1199 (Wash. Ct. App. 2003); Bush v. O'Connor, 791 P.2d 915, 918-19 (Wash. Ct. App. 1990); see Restatement (Second) of Conflict of Laws § 146. Because Washington is the place of personal injury, the Court adopts the presumption that Washington law applies. See Zenaida-Garcia v. Recovery Sys. Tech., Inc., 115 P.3d 1017, 1020 (Wash. Ct. App. 2005); Brewer v. Dodson Aviation, 447 F. Supp.2d 1166, 1176 n.5 (W.D. Wash. 2006). In air crash cases, however, most courts find that this presumption is easily overcome because the place of injury is fortuitous. See Chicago, 644 F.2d at 615; Brewer, 447 F. Supp.2d at 1179; Stapleton, 720 F. Supp. at 1452; In re Air Crash Disaster At Washington D.C. On Jan. 13, 1982 ("Washington, D.C."), 559 F. Supp. 333, 348-50 (D.D.C. 1983); Freeman v. World Airways, Inc., 596 F. Supp. 841, 847 (D. Mass. 1984); see also Restatement (Second) § 146 (presumption is overcome if another state has greater interest in determination of particular issue); Zenaida-Garcia, 115 P.3d at 1020 (same).[3]

Because the location of an air plane crash is ordinarily fortuitous, the state where the crash occurs typically does not have a significant interest in and ability to control behavior by deterrence or punishment or an interest in protecting defendants from liability. In contrast, the state where the misconduct occurred, particularly when that state is also defendant's principal place of business, has a much greater interest in controlling behavior and in protecting defendant from liability. Chicago,

---

[3]     Some courts give slightly more weight to the location of the crash where the crash occurs on landing or take-off. See, e.g., Stapleton, 720 F. Supp. at 1452; Chicago, 644 F.2d at 615; Washington, D.C., 559 F. Supp. at 348-50; Freeman, 596 F. Supp. at 847. Here, the crash occurred in Naches, Washington, some 100 miles from the destination of Shelton, Washington and some 300 miles from the departure location of Star, Idaho. Because the crash here did not involve take-off or landing, this principle does not apply.

644 F.2d at 615; Stapleton, 720 F. Supp. at 1453.  In air crash cases, the most important contacts to

consider in the choice of law analysis on punitive damages are (1) defendant's principal place of

business and (2) the place where the misconduct that is the subject of the punitive damages claim

took place.  See In re Air Crash Disaster Near Roselawn, Ind., On October 31, 1994, MDL 1070,

1997 WL 572897, at *2 (N.D. Ill. Sept. 9, 1997); Stapleton, 720 F. Supp. at 1452-54; Belle Harbor,

2006 WL 1288298, at *24; In re Air Crash Disaster At Sioux City, Iowa, On July 19, 1989, 734 F.

Supp. 1425, 1430 (N.D. Ill. 1990); see also Brewer, 447 F. Supp.2d at 1180 (most significant contact

is place of injury-causing conduct); Bethlehem Constr., Inc. v. Transp. Ins. Co., No. 03-0324-EFS,

2006 WL 2818363, at *32 (E.D. Wash. Sept. 28, 2006) (in non-air crash case on issue of punitive

damages, applying law of state where alleged tortious conduct occurred).  The Court agrees

substantially with the reasoning of the Honorable Sherman G. Finesilver as follows:

> Texas is both the site of the conduct to which an award of punitive damages could
> attach and defendants' principal place of business thus its relationship to
> this litigation is most significant.  See Emmart v. Piper Aircraft Corp., 659 F. Supp. 843,
> 845-46 (S.D. Fla. 1987).
>
> A comparison of the interests of Colorado [the location of the plane crash]
> and Texas further substantiates this conclusion.  While Colorado has an interest in
> regulating the conduct of corporations entering its jurisdiction to do business, it[s]
> interest in air safety is somewhat lessened when a foreign corporation attempts to
> shield itself from the more onerous laws of its home state by seeking refuge under
> Colorado law.  See Chicago, 644 F.2d at 613-14; Bryant, 703 P.2d at 1195-96.  The
> shared goal of safe air travel is served by applying the law of a home state to an
> airline like Continental.  See id.  Furthermore, Colorado's decision to maintain its
> economy will not be frustrated by applying the law of Texas.  The knowledge that
> the law of a corporation's principal place of business and responsible operations will
> be applied in the event of litigation is not likely to discourage corporations like
> Continental from doing business in Colorado.  Id.

Stapleton, 720 F. Supp. at 1453 (citation and footnote omitted).

Here, the plane crash occurred in Washington, but the presumption that Washington law

applies is easily rebutted because the location of the crash was fortuitous.  Cessna is incorporated and conducts business primarily in Kansas.  Cessna tested, certified, manufactured and assembled the plane in Kansas.  Because plaintiffs allege defects in the testing and certification of the plane, Kansas is the place where the alleged injury-causing conduct occurred.  Plaintiffs' decedents resided in Washington and their estates were established in that state, but those contacts are entitled to little weight because the most significant contacts for purposes of determining punitive damages, i.e. Cessna's principal place of business and the location of the alleged misconduct, are with Kansas. Because the contacts on the punitive damages issue strongly favor Kansas, the Court applies Kansas law to the fraud claim, which seeks punitive damages only, against Cessna.  See Johnson v. Cont'l Airlines, 964 F.2d at 1061 (law of Texas, location of defendant's headquarters, governs punitive damage award).

Cessna notes that in one of the cases in this MDL action involving a plane crash in Idaho, Magistrate Judge David J. Waxse determined that because the aircraft crashed in Idaho, that state had the most significant relationship to the state law tort claims against Cessna and Goodrich.  See In re Cessna 208 Series Aircraft Prods. Liability Litig., 2007 WL 2172764, at *7 (D. Kan. July 25, 2007).  The Court declines to follow Magistrate Judge Waxse's ruling here because (1) Cessna is the only defendant as to the fraud claim asserted by plaintiffs in the Washington case; (2) Judge Waxse did not note any factors which would rebut the presumption that the law of the location of the crash should apply; and (3) Judge Waxse did not apply a separate choice of law analysis to plaintiffs' claims for compensatory and punitive damages and did not address the majority of cases which find that where the place of the alleged misconduct and defendant's principal place of business are the same, that state's law controls over the place of injury.

-8-

Under Washington law, if the contacts with the various states are evenly balanced, the Court evaluates the interests and public policies of potentially concerned jurisdictions, the extent of which "should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and the particular issue involved." Southwell, 676 P.2d at 480; see Zenaida-Garcia, 115 P.3d at 260-61; Spider Staging, 555 P.2d at 1000. As explained above, the relevant contacts strongly favor Kansas so the Court need not evaluate the second step. The Court applies Kansas law to plaintiffs' fraud claim, and declines to dismiss plaintiffs' punitive damage claim on the ground that Washington law applies.

## II.        Failure To State A Claim

Cessna argues that under Kansas law, plaintiffs have not stated a claim. The Court agrees, and finds that plaintiffs' fraud claim must be dismissed. To establish fraud under Kansas law, plaintiff must show by clear and convincing evidence that they reasonably relied and acted to their detriment on a false representation. See PIK-Civil.3d § 127.40 (reasonable reliance required for fraud); Nichols v. Kan. Political Action Comm., 270 Kan. 37, 53, 11 P.3d 1134, 1146 (2000); Tetuan v. A.H. Robins Co., 241 Kan. 441, 465-67, 738 P.2d 1210, 1228-30 (1987). The reliance element of misrepresentation serves the function of causation in fact: that the misrepresentation causes someone to act or refrain from acting. Tetuan, 241 Kan. at 468, 738 P.2d at 1230 (quoting Restatement (Second) of Torts § 546, Comment B).

The Court substantially agrees with Judge Waxse's reasoning in evaluating nearly identical allegations of fraud in four other cases in this MDL proceeding as follows:

> The Court has carefully reviewed Plaintiffs' proposed amendments, and finds
> no facts alleged which establish that Defendant had any intent that the "hypothetical
> numbers" be relied upon by Plaintiffs or their decedents. Nor are there any facts pled
> establishing what acts Plaintiffs or their decedents took in reliance on Cessna's

allegedly false statements.  Indeed, the proposed amended complaints are devoid of any allegations even showing that Plaintiffs or their decedents had knowledge of the alleged misrepresentations.

In re Cessna 208 Series Aircraft Prods. Liability Litig., 2006 WL 3858465, at *4 (D. Kan. Dec. 22, 2006).[4]

Here, plaintiffs apparently argue that because "third persons have been defrauded," the Court should presume reliance.  Plaintiffs' Opposition (Doc. #552) at 21-22 (quoting Segal v. Gordon, 467 F.2d 602, 607 (2d Cir. 1972)) (further citation omitted).  Plaintiffs essentially argue that because Cessna publicly disseminated misleading information, the Court should adopt a type of "fraud-on-the-market" presumption of reliance similar to the one applied in securities fraud cases.  See Basic v. Levinson, 485 U.S. 224, 241-42 (1988) (because stock price in efficient market reflects all publicly available information, misleading statements will defraud purchasers of stock even if purchasers do not directly rely on misstatements).  Plaintiffs cite no authority for this type of presumption in non-securities cases and the Court declines to read such a presumption into common law fraud claims under Kansas law.  See McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 223 (2d Cir. 2008)  (Basic presumption, or district court's variation of it, does not apply because court

---

[4]      Judge Waxse subsequently granted plaintiffs in those four cases leave to amend to add a fraud claim because they alleged that the pilots relied on the information which Cessna reported.  See In re Cessna 208 Series Aircraft Prods. Liability Litig., 2007 WL 1035153, at *2-3 (D. Kan. Apr. 3, 2007).  In addition, Judge Waxse allowed the Ingram and Villanueva plaintiffs to amend their complaints to add a claim for punitive damages.  See id.  Judge Waxse noted that the Ingram and Villanueva plaintiffs added specific allegations of reliance by decedents, who were both pilots.  See id.  Judge Waxse later held that despite specific allegations of reliance by the pilots, the Ingram and Villanueva plaintiffs did not present sufficient evidence to establish "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages" as required by Idaho Code § 6-1604(2).  See In re Cessna 208 Series Aircraft Prods. Liability Litig., 2007 WL 2172764, at *6-7 (D. Kan. July 25, 2007).  In the instant motion, which involves the cases consolidated as Jones v. Cessna Aircraft Co., D. Kan. No. 08-2273, plaintiffs specifically allege that they were passengers on the flight and had no control over the operation of the aircraft.  See Plaintiffs' Consolidated Complaint At Law (Doc. #486) at 6.

cannot assume that individual smokers were aware of defendants' misrepresentation or that market at large internalized misrepresentation to such extent that all plaintiffs could be said to have relied on it).

Some courts have recognized fraud claims in cases of third party or indirect reliance, but only if plaintiffs establish that (1) they received the information from someone who received it from defendant; (2) defendant intended the information to be conveyed to them and (3) they justifiably relied on the information.[5]  Restatement (Second) of Torts § 533 (1977); Citizens State Bank, 226 Kan. at 669-70, 603 P.2d at 611; Turtur v. Rothschild Registry Int'l, Inc., 26 F.3d 304, 310 (2d Cir. 1994).  Because plaintiffs have not alleged that they knew of Cessna's representations to the FAA or to pilots, they cannot establish that they received the information or that they detrimentally relied on it.  See McLaughlin, 522 F.3d at 223 (in class action suit for fraud, proof of widespread and uniform misrepresentation does not establish reliance on misrepresentation); Burton v. R.J. Reynolds Tobacco Co., 397 F.3d 906, 913 (10th Cir. 2005) (because plaintiff did not learn of tobacco industry's statements until after he filed suit, he could not have relied on them in making his decision to smoke); Gentry v. Volkswagen of Am., Inc., 521 S.E.2d 13, 19 (Ga. App. 1999) (no fraud claim under RICO because plaintiff's injuries flow only indirectly from alleged misrepresentations to National Highway Transportation Safety Administration; more than but for causation required); In re Horizon Cruises Litig., 1999 WL 436560, at *2 (S.D.N.Y. June 24, 1999) (no fraud on public because no expectation that passengers of cruise ship would see spa manufacturer's certification and no allegation that plaintiffs aware of false labeling); Pease v. Beech

---

[5]        Kansas courts also have recognized a fraud claim when a vendor sells an item without disclosing a defect to a second party who in turn innocently sells the defective item to a third party. Larson v. Safeguard Props., Inc., 379 F. Supp.2d 1149, 1155 (D. Kan. 2005); see Citizens State Bank v. Gilmore, 226 Kan. 662, 603 P.2d 605 (1979); Griffith v. Byers Constr. Co., 212 Kan. 65, 510 P.2d 198 (1973); State ex rel. Stephan v. GAF Corp., 242 Kan. 152, 747 P.2d 1326 (1987).

Aircraft Corp., 113 Cal. Rptr. 416, 426 (Cal. Ct. App. 1974) (sweeping allegation of fraud upon public based on airworthiness certificate for airplane insufficient to state cause of action for fraud unless reliance by specific person is alleged); cf. Learjet Corp. v. Spenlinhauer, 901 F.2d 198, 201-03 (1st Cir. 1990) (purchaser of airplane stated fraudulent misrepresentation claim under Kansas law based on manufacturer's statements to FAA for plane certification where purchaser relied on FAA's certification).  Accordingly, the Court sustains Cessna's motion to dismiss Count III of plaintiffs' complaint.[6]

IT IS THEREFORE ORDERED that Defendant Cessna Aircraft Company's Motion To Dismiss Fraud And Punitive Damages Claim (Doc. #508) filed July 11, 2008 be and hereby is SUSTAINED.  The Court dismisses Count III of Plaintiffs' Consolidated Complaint At Law (Doc. #486) filed June 24, 2008.

IT IS FURTHER ORDERED that Plaintiffs' Request For Oral Argument On Defendant Cessna's Motion To Dismiss Fraud And Punitive Damages Claim (Doc. #572) filed September 9, 2008 be and hereby is OVERRULED.

Dated this 5th day of February, 2009 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[6]     To the extent that plaintiffs attempt to assert a fraudulent concealment or fraud by silence claim, the claim fails because plaintiffs have not alleged that they justifiably relied on Cessna to communicate the information to them.  See Nichols, 270 Kan. at 53, 11 P.3d at 1146 (plaintiffs must show reliance on disputed communications and resulting detriment); OMI Holdings, Inc. v. Howell, 260 Kan. 305, 344-45, 918 P.2d 1274, 1299 (1996) (justifiable reliance element of fraud by silence claim).